IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-441-RJ

| | |
|---|---|
| JERMAINE JONES, <br><br> Plaintiff/Claimant, <br><br> v. <br><br> ANDREW SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | ORDER |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-17, -23] pursuant to Fed. R. Civ. P. 12(c). Claimant Jermaine Jones ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on June 29, 2016, alleging disability beginning May 2, 2015. (R. 13, 236–39). His claim was denied initially and upon reconsideration. (R. 13, 79–109). A hearing before the Administrative Law Judge ("ALJ") was held on November 30, 2017, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 13, 31–78). On May 30, 2018, the ALJ issued

a decision denying Claimant's request for benefits. (R. 10–30). On July 19, 2018, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) the ALJ's decision violates *Bird* by failing to accord substantial weight to the VA disability rating; (2) the ALJ erred by failing to account for the vocationally limiting effects of Claimant's frequent bathroom usage in the RFC; and (3) the ALJ failed to evaluate probative evidence when assessing Claimant's social

3

functioning. Pl.'s Mem. [DE-18] at 9–14.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since May 2, 2015. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: obesity; post traumatic stress disorder (PTSD) with sleep disturbance; depressive disorder; migraine headaches; history of colon cancer; status post (s/p) bowel resection; plantar fasciitis; pes planus; s/p bilateral bunionectomies with residual symptoms; inguinal hernia; obstructive sleep apnea (OSA); degenerative disc disease (DDD) of the cervical spine; disc narrowing of the lumbar spine; and tinnitus bilaterally. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15–17).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work,[1] specifically that Claimant can lift/carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand, and walk for six hours; and push/pull as much as he can lift/carry. (R. 17–23). The ALJ also imposed the following limitations: occasional climbing; frequent stooping, kneeling, crouching, and crawling; frequent overhead reaching bilaterally; occasional exposure to atmospheric conditions, moving mechanical parts, and high, exposed places; exposure up to and including moderate noise; occasional interaction with supervisors and coworkers, but only incidental interaction with the public, defined as one hour per

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

4

day and no more than ten minutes during any one sustained period; limited to "unskilled work," as defined in Social Security Ruling 83-10; and limited to occasional changes to the manner and method of performing the assigned work. *Id.* In making this assessment, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of his symptoms not fully consistent with the objective medical and other evidence. (R. 18).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 23). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 24).

## V. DISCUSSION

### A. The VA Disability Rating

Claimant contends that the ALJ erred in failing to accord substantial weight to his 100% VA disability rating. Pl.'s Mem. [DE-18] at 9–11. Specifically, Claimant asserts that the ALJ erred when he cited to "different standards" as his reason for giving less than substantial weight to the VA disability rating. Pl.'s Mem. [DE-18] at 11. The Commissioner contends that the ALJ properly considered the VA opinion because he acknowledged the 100% VA rating, explained why the ALJ's opinion was based on a different standard, and the ALJ mentioned each impairment in the rating and assessed its impact on Claimant's RFC. Def.'s Mem. [DE-24] at 7. The court agrees with the Commissioner that the ALJ did not err in evaluating the VA decision.

In *Bird v. Commissioner*, the Fourth Circuit noted that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." 699 F.3d 337, 343 (4th Cir. 2012). "Thus, . . . in making a

5

disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate."). Simply noting the fact that the VA and SSA employ different standards, in and of itself, is insufficient to justify deviation under *Bird*. *See Nguyen v. Colvin*, No. 5:14-CV-227-D, 2015 WL 5062241, at *7 (E.D.N.C. Aug. 10, 2015) ("[T]he reasons cited by the Commissioner— different rules and different standards—would apply to every case and thus cannot be relied upon to avoid scrutiny of the [agency's] decision under *Bird's* new presumptive standard."), *adopted by* 2015 WL 5089060 (E.D.N.C. Aug. 27, 2015).

> Here, the ALJ begins by explaining the difference between the VA and SSA standards:
> 
> The seminal difference between the disability adjudication process in the VA system and the SSA's determination of disability is the SSA focus on functional capacity and functional limitations from impairments. Whereas the VA assigns percentages of disability from a published chart, without consideration of the impact of the rated component impairment on the claimant's ability to perform basic work tasks, SSA focuses directly upon such functional limitations and their impact on the ability to perform past work, as well as other jobs existing in the national economy.

(R. 22). However, the ALJ goes beyond simply noting the fact that the VA and SSA employ different standards. Throughout his RFC discussion, the ALJ notes each impairment in the rating and assesses its impact on the RFC, making his own evaluation based on the standards of the SSA. It is from his assessment of the evidence and the effect of each impairment on the RFC that he bases his determination that deviation was appropriate.

The ALJ discussed the evidence relating to Claimant's 30% chronic diarrhea rating. In 2012, Claimant had colon cancer and had 80% of his bowel removed. (R. 19, 493). Medical

records from both April 2016 and April 2017 indicate that his cancer was in remission. (R. 19, 694). Claimant testified that he was cancer free. (R. 19, 45). Claimant stated that he has gastrointestinal problems, and that he has to use the bathroom within minutes of eating, but that he does not wear protective garments. (R. 18, 53–54). In March 2016 Dr. Carbonell, M.D. noted that Claimant complained of loose stools daily from having his colon removed for malignancy. (R. 19, 2042).

The ALJ also discussed the evidence relating to Claimant's 70% PTSD rating. The Claimant stated he had PTSD and depression. (R. 18, 48–51). Claimant also stated that he has anxiety but that his medication helps. *Id*. Claimant attended prolonged exposure therapy, which he said helped with both his PTSD and coping skills. *Id*. He is able to maintain his household, is the sole provider for his school-age daughter, is independent in his self-care needs, and is able to drive. (R. 19, 31–78). He works out at home regularly. *Id*. He does yardwork and mows. *Id*. He stated that his medication helps when he takes it. *Id*.

In March 2015, Dr. Carbonell, M.D. noted that Claimant was diagnosed with PTSD in 2014. (R. 19, 2042). In February 2016, Dr. Brannon, Ph.D., and David Johnson, M.A., conducted a psychological consultative evaluation. (R. 20, 2021–30). Claimant's mental status exam showed him to be active and responsive. *Id*. His reality was intact, and his speech rate was normal, but his eye contact was limited. *Id*. He reported feeling anxious and depressed and that he experienced nightmares and flashbacks from his combat experience while in the military. *Id*. He also reported that he felt numb, detached, and irritable and that he often experienced mood swings. *Id*. Claimant reported that he avoided doing things or going places that reminded him of his past. *Id*. However, he denied doing things that got him into trouble or ever having suicidal or homicidal thoughts. *Id*. Dr. Brannon noted that his affect was appropriate to content and conversational shifts. *Id*. She

7

also noted that the claimant appeared to be capable of understanding instructions adequately to perform simple, routine, and repetitive tasks, and that he showed fairly good social skills. *Id.* He was able to interact appropriately with others including peers, coworkers, and supervisors, although he was withdrawn and did have trust issues. *Id.*

Dr. Burgess, Psy.D., and Ashley Weeks, M.A., performed a psychological consultative evaluation in December 2016. (R. 20, 502–06). Claimant reported that his mood was empty and that he had crying spells but denied homicidal or suicidal thoughts. (R. 21, 502–06). He reported visual hallucinations. *Id.* However, his thought process was clear and logical, and he was oriented to person, time, place, and situation. *Id.* His remote memory was adequate. *Id.* He acknowledged his need for mental health treatment. *Id.* Dr. Burgess diagnosed him with PTSD and noted that he appeared to be able to sustain attention to perform simple repetitive tasks, but that he would have difficulty in relating to fellow workers and supervisors. *Id.* He would also be limited in his ability to handle the stress of day-to-day work. *Id.* In January 2017, VAMC treatment notes indicated that Claimant's main complaint was that he had PTSD including aggression, depression, anxiety, nightmares, and hypertension. (R. 21, 792). However, Claimant reported that he was not hallucinating and had no problems carrying out daily activities such as performing housework, preparing meals, transportation, and managing his medications and finances. (R. 21, 520).

The ALJ extensively discussed the evidence pertaining to Claimant's 100% VA disability rating, and it is not the court's role to re-weigh evidence. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). Regarding Claimant's 30% rating for chronic diarrhea, he noted that the evidence shows no recurrence, and Claimant does not wear protective garments, take medication, or experience bowel or bladder incontinence. (R. 22, 193–235). Regarding Claimant's 70% rating for PTSD, the ALJ noted that Claimant is capable of performing a wide range of daily activities

8

and that despite his mental impairments he is able to perform simple unskilled work. (R. 22). He notes that this assessment is supported by the psychological consultative evaluations. (R. 23).

The VA rating itself also supports the ALJ's finding that Claimant could perform work with limitations. On September 9, 2015, Mr. Jones was assigned a 100% VA disability rating based in part on his 70% rating for PTSD and 30% rating for chronic diarrhea. (R. 197, 209). His PTSD rating is due to his difficulty adapting to work or to stressful circumstances, impaired impulse control, "unprovoked irritability with periods of violence," disturbances of motivation and mood, "difficulty in establishing and maintaining effective work and social relationships," depressed mood, chronic sleep impairment, anxiety, suspiciousness, and "occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care and conversation normal)." (R. 197). Claimant's PTSD rating was 70% rather than 100% because the VA noted that the evidence did not show total occupational and social impairment, suggesting that work could be done with accommodation. *Id.* The VA rating is consistent with the ALJ's finding. The ALJ imposed restrictive conditions in the RFC to account for Claimant's PTSD, with a limitation to occasional interaction with supervisors and coworkers, and only incidental interaction with the public, defined as one hour per day and no more than ten minutes during one sustained period. (R. 18). His 30% chronic diarrhea rating is due to his diarrhea and frequent episodes of bowel disturbance and distress. (R. 209). However, the 30% VA rating indicated that his condition was expected to improve. *Id.*

Here, the ALJ's discussion, read as a whole, demonstrates that deviation was appropriate, and thus the ALJ's decision did not violate *Bird*. The ALJ discusses the relevant evidence regarding Claimant's 70% PTSD rating and 30% chronic diarrhea rating, and sufficiently

9

explained why they did not preclude Claimant from performing work with limitations. Thus, the ALJ's decision not to give substantial weight to the VA disability rating is supported by substantial evidence. *See Ellison v. Berryhill*, No. 7:17-CV-156-RJ, 2018 WL 3618371, at *4, (E.D.N.C. July 30, 2018) (finding no error in the ALJ's evaluation of the VA disability rating, where the ALJ sufficiently explained his reasoning for deviating from the VA disability rating because the ALJ's decision read as a whole contained substantial evidence supporting deviation).

**B.     The limiting effects of Claimant's frequent bathroom usage in the RFC.**

Claimant contends that the ALJ erred by failing to account for the vocationally limiting effects of Claimant's frequent bathroom usage in the RFC. Pl.'s Mem. [DE-18] at 12–13. Claimant argues that his frequent bathroom usage due to his loose stools and diarrhea would take him away from his work station often. *Id*. This is based on Claimant's testimony during his hearing that he must use the restroom within minutes of eating and that before his hearing he had already used the restroom four times that day. *Id*. The VE testified that if Claimant were off task for more than 13% of the time he would be unemployable. (R. 76). From this Claimant concludes that the ALJ did not properly include an accommodation for his frequent bathroom usage in the RFC, because it could take him off task for more than 13% of the workday. Pl.'s Mem. [DE-18] at 12–13. The Commissioner contends that the ALJ properly gave no weight to Claimant's allegations about a need for constant bathroom breaks. Def.'s Mem. [DE-24] at 10. The court agrees with the Commissioner.

An individual's RFC is the capacity he possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017) (defining the RFC as "the most [the claimant] can still do despite [his] physical and mental

10

limitations"). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96–8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5.

Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work-related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed along with a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted).

The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," as well as a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

The ALJ discussed the evidence relating to Claimant's gastrointestinal problems. In 2012, Claimant had colon cancer and had 80% of his bowel removed. (R. 19, 493). Medical records

11

from both April 2016 and April 2017 indicate that his cancer was in remission. (R. 19, 694). Claimant testified that he was cancer free. (R. 19, 45). Claimant stated that he has gastrointestinal problems, and that he has to use the bathroom within minutes of eating, but that he does not wear protective garments. (R. 18, 53–54). In March 2016, Dr. Carbonell M.D. noted that Claimant complained of loose stools daily from having his colon removed for malignancy. (R. 19, 2042).

The ALJ concluded that "his impairments are likely to produce some of the functional limitations that he speaks of, but not to the extent that he is unable to satisfy the demands of regular work activity on a sustained basis." (R. 23). The ALJ draws this conclusion from the fact that Claimant's medical record indicates that his colon cancer is in remission. (R. 19, 694). The ALJ acknowledged that Claimant has complained of loose stools to his physicians and claims he must use the bathroom within minutes of eating. However, the ALJ discussed the evidence regarding Claimant's colon cancer remission, as well as the fact that Claimant does not wear protective garments, does not take medication, and does not experience bowel or bladder incontinence. (R. 18, 193–235). Thus, the ALJ drew an accurate and logical bridge from the evidence to his conclusion. *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016). It is not the role of the court to re-weigh the evidence. *Mastro*, 270 F.3d at 176. Therefore, the ALJ did not err in his consideration of the effect of Claimant's frequent bathroom usage in the RFC.

### C. Claimant's Social Functioning

Claimant contends that the ALJ failed to evaluate probative evidence when assessing Claimant's social functioning. Pl.'s Mem. [DE–18] at 13–14. The Commissioner argues that the ALJ properly evaluated Claimant's social functioning, and the ALJ's conclusions are supported by the 70% PTSD disability rating, and the medical evidence. Def.'s Mem. [DE-24] at 12–13. The court agrees with the Commissioner.

While it is not the province of this court to weigh the evidence considered by the ALJ, the court must consider whether the ALJ considered and analyzed all the relevant evidence. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439–40. The ALJ may not select and discuss only that evidence that favors her ultimate conclusion. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (noting that the ALJ is obliged to consider all relevant medical evidence and cannot "cherry-pick" facts supporting non-disability while ignoring contrary evidence); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (explaining the ALJ cannot pick and choose only the evidence that supports his position); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (In addition to discussing the evidence supporting his decision in a social security disability benefits case, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.).

The ALJ extensively discusses the evidence regarding Claimant's social functioning. He acknowledged that Claimant was diagnosed with PTSD in 2014. (R. 19, 2040). He discussed a February 2016 psychological consultative evaluation ("CE") by Dr. Brannon, Ph. D., and David Johnson, M.A., during which Claimant's mental status exam showed that he was active and responsive, his reality contact was intact, and his speech rate was normal. (R. 20, 2026–30). He reported being depressed and anxious, experiencing flashbacks and some nightmares related to his combat experience while in the military. *Id.* He reported that he avoided doing things or going places that reminded him of his past and that he felt numb and detached towards things going on around him. *Id.* He also reported mood swings and irritability but denied doing things that got him into trouble. *Id.* However, Dr. Brannon assessed that Claimant demonstrated fairly good social skills and the ability to interact appropriately with others including peers, coworkers, and supervisors, but that he was withdrawn socially and had some trust issues. *Id.* She recommended

13

mental health services including psychiatric treatment and counseling. *Id.*

In December 2016, Claimant underwent another psychological CE by Dr. Burgess, Psy.D., and Ashley Weeks, M.A., which revealed that he was cooperative and polite, and his speech was clear, coherent, and normal in rate in volume. (R. 20, 502–06). Claimant reported that his mood felt empty, and that he experienced crying spells, but again denied suicidal or homicidal thoughts. (R. 20–21, 502–06). Dr. Burgess assessed that Claimant was able to sustain attention to perform simple repetitive tasks but that he would likely have difficulty relating to fellow workers and supervisors. Further, Claimant's ability to tolerate stress associated with day-to-day work activity would probably be limited. (R. 21, 502–06)

In January of 2017, Claimant reported aggression, depression, anxiety, nightmares, and hypertension but that he did not need help supervising his daily activities and had no trouble preparing meals, performing housework, driving, or managing his medications or his finances. (R. 21, 785–842). In September 2018, Claimant's treatment notes state that he was alert and oriented times four, his appearance was neat and casual, and he made appropriate eye contact during the entire session. *Id.* Claimant's speech rate, volume, and prosody were normal, and his thought process was relevant and goal oriented. *Id.* He neither displayed or reported psychotic symptoms, delusional content, or homicidal or suicidal ideations. *Id.* Again, Claimant reported that he did not need any help with basic daily activities. *Id.*

Based on the evidence, the ALJ concluded that despite his mental impairments Claimant is able to perform simple unskilled work. (R. 23). The ALJ also included the limitations of only occasional interaction with supervisors and coworkers; only incidental interaction with the public, defined as one hour per day and no more than ten minutes during any one sustained period; and limited to occasional changes in the manner and method of performing the assigned work. (R. 17–

14

18).

The ALJ explained that his determination was made based on the fact that Claimant is able to perform a wide range of activities of daily living, including maintaining a household as a single parent, cooking, cleaning, doing yardwork, grocery shopping, and driving. (R. 23, 31–78). Further, Claimant testified that his medication and counseling have helped and that he now attends counseling only once every two months. (R. 23, 51). The ALJ also made this determination based on the consultative examinations of Dr. Brannon who concluded that while Claimant was withdrawn socially and had some trust issues, he demonstrated fairly good social skills and the ability to interact appropriately with others including peers, coworkers, and supervisors, and Dr. Burgess, who concluded that Claimant was able to sustain attention to perform simple repetitive tasks. (R. 22, 2020–30, 502–07). The ALJ explained that he found Dr. Brannon's and Dr. Burgess' assessments highly persuasive because both are consistent with the objective medical evidence and the record as a whole, including Claimant's daily activities. (R. 22). Thus, there is substantial evidence to support the ALJ's determination, and the ALJ did not fail to evaluate probative evidence when assessing Plaintiff's social functioning.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-17] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] is ALLOWED and the final decision of the Commissioner is affirmed.

So ordered, this the 24th day of July, 2019.

Robert B. Jones, Jr.
United States Magistrate Judge

15